Bland, Chancellor.
The arguments of counsel having been heard in this case, the proceedings were read and considered.
It appears, that Campbell & Ritchie being seized of two tracts of land, sold them, clear of all incumbrances, to Dorsey, for the sum of fourteen hundred and sixty-two dollars and fifty cents, to bear interest from the eighth day of June, 1815, when the purchaser was put into possession, until paid. So far the case admits of no difficulty.
As to the manner in which Dorsey was to make payment to Campbell & Ritchie, the receipt or agreement of the 12th of July, 1816, is expressed in these words: “ And for which they are to be paid in bonds, notes, and other claims endorsed by C. Dorsey, Esq.” And the assignment of the same date, made by Dorsey, is expressed in these words : “I hereby assign unto Henry Chapman, Esq., for the use of Campbell 4r Ritchie, the above causes of action, which are supposed to be correct, with an understanding and agreement, that I am responsible for their eventual solvency.” The general expressions, “to be paid in bonds, notes, and other claims,” without any distinct specification, can only be understood as an indication of the character of the fund which was to be placed by the plaintiff under the legal command of the defendants to the full amount of the purchase money. If Dorsey had failed or refused to place in the hands, or at the disposal of Campbell if Ritchie, choses in action to the full amount of the purchase money, then he would have been liable for the whole, or pro tanto, on the ground of a non compliance with his contract. If there had been nothing added to this general specification of the fund, out of which payment was to be made, the contract might have been considered in the light of an exchange or barter of one article of value for another, deemed to be of equal value, — a conveyance of land in consideration of an assignment of choses in action only, without the further responsibility of the assignor.
But the contract informs us, that the payment was to be made, “ in bonds, notes, and other claims, indorsed by C. Dorsey, Esq.;” and also that Dorsey expressly says, “ I am responsible for their eventual solvency.” The fair, clear sense of these expressions removes every difficulty. Dorsey was to have the privilege of *358 paying out of a designated fund, to be placed in the hands, and at the disposal of Campbell & Ritchie; but he was to warrant, that, with due and proper diligence on their part in endeavouring to make it available, it would be ultimately productive to the whole amount of the purchase money. It does not appear, that Campbell & Ritchie are chargeable with any want of diligence in endeavouring to collect the money due on the choses in action transferred to them, (a)
It would seem, from the expressions of the contract, that Dorsey was to be allowed a reasonable time to assign, and deliver to Campbell & Ritchie, or their agent, choses in action-, out of which they were to collect the amount stipulated to be paid to them; but that time has elapsed; and indeed, Dorsey, by bringing this suit has virtually waived the privilege of referring the defendants for payment to any choses in action in addition to those he had already transferred to them.
This case, then, stands thus : — Dorsey must be charged with the sum of fourteen hundred and sixty-two dollars and fifty cents, with interest from the eighth day of June, eighteen hundred and fifteen; first deducting therefrom the amount of the incumbrances on the land; that is, the judgment against Anderson, the former owner, and also the taxes due when Dorsey got possession. Dorsey Is then to be credited with the sums actually received by Campbell & Ritchie from the choses in action transferred to them. And, since the object of this mode of payment was merely to prevent Dorsey from being called on until Campbell If Ritchie had used every proper exertion to make the specific funds available, Dorsey is only to be accredited with the net proceeds of the choses in action received by Campbell & Ritchie, or their attorney, after allowing every legal discount or set off, and expense of collection on each one. No expense or charge, however, is to be allowed for paying over any money so received, from the attorney of Campbell & Ritchie to them. But the credit is to be given to Dorsey as a payment on the day on which such proceeds were received, either by Campbell & Ritchie, or their attorney. If any of the debtors chargeable by the choses in action assigned by Dorsey, have been ascertained to be wholly or partially insolvent, he must be charged to that amount.
With these explanations and determinations as to the principles *359 of this case, it is hereby referred to the auditor, with directions to state an account accordingly, preparatory to a final decree.
In obedience to this order, the auditor, on the 16th of September, 1825, made a report, in which lie stated the amount of the balance then due from the plaintiff to the defendants; to which the plaintiff filed no exceptions.
29th March, 1826. — Bland, Chancellor. — This case standing ready for hearing, and having been submitted, the proceedings were read and considered.
This is a bill for a specific performance of a contract between the plaintiff and the defendants. From the agreement, as stated and admitted, it appears, that each party was bound to perform something for the benefit of the other. The plaintiff bound himself to pay to the defendants the whole amount of the purchase money; and the defendants bound themselves, on being so paid, to convey to the plaintiff the two specified parcels of land. It now appears that a part of the purchase money is still due; and that no conveyance of the legal title has been yet executed and delivered. In cases of this kind, according to the ancient course of the court, it was necessary to file a cross-bill, in order that each party might be decreed to perform that to which he had bound himself. But this circuitous and expensive course has, of late, been dispensed with in all cases where the plaintiff, by his bill, offers to perform the agreement;, and it is admitted, or set out in the answer, and proved as thus set forth by the defendant. No cross-bill has for some time past been deemed necessary, either in England or in Maryland, in such cases ; but a decree is passed in favour of each party for that to which he is entitled; upon the ground, that the whole matter in controversy has thus been well and sufficiently brought before the court, put in issue, and considered by such an original bill, answer and proofs.(b)
*360 Whereupon it is decreed, that the auditor’s report be, and the same is hereby ratified and confirmed. And it is further decreed, *361 that the complainant Clement Dorsey do, on or before the twentieth day of April next, pay to the defendants Campbell & Ritchie, or *362 bring into this court, to be paid to them, the sum of eight hundred and twenty-two dollars and seventy-eight cents, with interest thereon from the first day of December, 1822.
And it is further decreed, that the said Campbell and Ritchie do, *363 by a good and sufficient deed to be executed and acknowledged according to law, convey to the said complainant Clement Dorsey, in fee simple, the two parcels of land called St. Clair and Recompense, lying and being in Charles county, and sold and conveyed by Henry Anderson to the said Campbell & Ritchie, and subsequently sold to the said Clement Dorsey by the said Campbell & Ritchie. The said conveyance to be made on the payment or bringing in of the sum of $822 78 with interest from the 1st of December, 1822, as aforesaid.
Upon this decree a fieri facias was issued on the 16th of November 1826, in favour of the defendants for the sum decreed to them against the plaintiff, which was levied on the lands specified in the decree; and they were sold and purchased by the solicitor of the defendants for their use for the sum of $710. After which on the 19th of January, 1828, the defendants filed their petition, stating these circumstances, and thereupon prayed, that the possession of the lands might be delivered to them.
21 st January, 1828. — Bland, Chancellor. — The petition 'of the defendants having been submitted without argument, the proceedings were read and considered.
It appears that the fieri facias, by virtue of which the land was sold, was returnable to March term 1827; but was not actually returned until the first day of September term of that year; and this application to have the possession delivered has not been made until after the end of the term then next following, or December term, which closed on the 15th of the present month.
The authority of this court to cause the possession of land, sold under its decree, to be delivered to the purchaser thereof, under certain circumstances, cannot be controverted; and the mode of proceeding in such cases has been well established.(c) But this *364 is not the case of a sale of land under a decree. The relief which the petitioners seek can only be obtained according to the course of the common law, or in the manner prescribed by the late act of assembly.(d)
This is the first application which has been made to the Chancellor to enforce the delivery of possession according to the provisions of this act. It is declared, that whenever any lands shall be sold by virtue of any process of execution from the Court of Chancery ; and the debtor named in the process, or any other person bolding under suck debtor by title subsequent to the date of the decree shall be in actual possession of the lands so sold, and shall fail or refuse to deliver possession of the same to the purchaser thereof, the court, on the application of the purchaser, and on no good cause having been shewn to the contrary by the said debtor, or other person concerned within the first four days of the term next succeeding that to which said process was returnable, shall issue a writ in the nature of a writ of habere facias possessionem, &c. commanding the sheriff to deliver possession of the said lands *365 to the purchaser thereof; without any saving or exception as to the then growing or unfinished crop of the occupying tenant, which, in favour of agriculture and for the benefit of the public, is almost always made by this court as well where the land is directed to be delivered by the decree itself to a party, as where it is ordered to be delivered to a purchaser from a trustee who made sale of it under a decree, (e)
This summary mode of proceeding by a purchaser to obtain the possession of lands which he has bought at a sale made by virtue of an execution issuing from the Court of Chancery, is thus specially and particularly described. And the time for showing cause why he should not be thus put into possession, is limited to the first four days of the term next succeeding that to which said process was returnable. This application has, therefore, been made according to the manner and after the time allowed for showing cause, for it is not made necessary for the applicant to call upon the occupant to show cause, as the public sale is assumed by this law to be a sufficient notice to him of the peril in which he stands; and the first four days of the term next succeeding that to which the *366 execution under winch the sale was made was returnable, is taken to be a sufficient allowance of time to provide for his safety.
It is thereupon Ordered, that a writ in the nature of a writ of habere facias possessionem issue as prayed, according to the provisions of the act of Assembly in such casé made and provided.
A writ of habere facias possessionem was accordingly issued and a return made upon it by the sheriff, that Mr. Wills, as agent of Campbell fy Ritchie, had been put in possession.

 Boyer v. Turner, 3 H. & J. 285.

 Fife v. Clayton, 13 Ves. 546; Higginson v. Clowes, 15 Ves. 525.
Watkins v. Watkins. — This bill was filed on the 7th of November, 1798, by Tobias Watkins, an infant, by William Kilty his guardian. It states, that some time before the year 1770, an agreement was entered into between the late father of the defendant with the late father of the plaintiff, whereby the defendant’s father contracted to convey to the plaintiff’s father, a certain tract of land, and accordingly put the plaintiff’s father into possession, which has been held by him and the plaintiff, his Only son and heir, ever since; and that the purchase money has been paid, but the legal title has not been conveyed; that the defendant brought an action of ejectment for the recovery of the land, and threatens to turn the plaintiff out of possession. *360 Prayer for a specific performance, and that the defendant may be restrained by injunction from proceeding further at law. An injunction bond was filed. Injunction granted. The defendant answered, and proofs were taken, &c.
27th March, 1802. — Hanson, Chancellor. — This cause being submitted on the arguments in writing of the counsel, the bill, answer, depositions, with the said arguments and all other proceedings, were by the Chancellor read and considered.
Some of the material facts stated in the bill are neither admitted by the answer, nor established by the depositions. The circumstances of this case are indeed peculiar; and a cause recently decided in the High Court of Appeals, without explaining the principles of their decision, has rendered uncertain to the Chancellor what principles are to govern in cases where the performance of an old agreement is sought in this court. He would certainly be guided by the opinion of that court, if he knew it. Upon the whole he conceives, that tire best thing he can do for the interests of both parties, and to render justice, and to put an end to controversy, is to recommend a reasonable compromise.
He then proposes a decree by consent, to tire following effect, viz. — I. The injunction shall he made perpetual; and the defendant shall convey to tire complainant and his.heirs, all his right, title, interest and estate in and to the land which is the subject of contest. — 2. The complainant, on or before the first day of next October term, shall bring into court, to be paid to the defendant, the sum of one hundred and sixty-six pounds, thirteen shillings and four pence current money. — 3. The defendant shall not be compelled to malee the said conveyance until the bringing in or payment, or levying of the said snm. And if the said money he not brought in, as aforesaid, the defendant, at his election, may either have the process of this court, on application to the Chancellor, to enforce the payment of the said sum, with interest, from the said first day of October term, or shall be at liberty to have a writ or process from the court of law to obtain possession of the land, by him recovered by Ms ejectment, as stated in the bill, the injunction aforesaid notwithstanding: and the complainant shall he prohibited from any relief in this court, on the agreement stated in the bill. 4. Each party shall sustain his own costs in this court and in the court of law.
On the application, by petition, at any time, of either party, who shall hereby refuse to accede to this recommendation, the Chancellor, without delay will proceed to decree, according to tile best of his judgment and conscience.
The defendant Nicholas Watkins assented to the terms proposed by the Chancellor. Upon which the following decree was passed.
30th August, 1802. — Hanson, Chancellor. — The defendant having folly acceded to the recommendation of the Chancellor, and pressed him to decree, he conceives, that there is no valid objection against decreeing according to the recommendation, although the complainant hath not acceded to it.
It is thereupon Decreed, that the injunction in this.cause issued shall be, and it is hereby declared to be perpetual; and that the defendant, by a good deed, to be acknowledged and recorded legally, convey to the complainant Tobias and his heirs all his the said defendant’s right, title and interest in and to the land in the hill mentioned, part of a tract called “ Friends’ Choice,” as in tile bill described. It is further decreed, that the complainant, on or before the first day of next October term, shall bring into court, to be paid to the defendant, the sum of one hundred and sixty-six pounds thirteen shillings and four pence current money. Provided nevertheless, that the said defendant shall not he compelled to execute the said deed until the bringing *361 in as aforesaid, or payment to Mm, or the levying of the said sum by 'execution; and provided also, that if the said money be not brought in as aforesaid, the defendant at his election shall either be entitled to the process of this court, on application to the Chancellor to enforce the payment of the said sum, with interest from the said first day, or shall be at libeity to have a writ or process from the court of law to obtain possession of the said land by him recovered, as stated in the bill, the injunction aforesaid notwithstanding. And the complainant shall be precluded from any relief in this court on the agreement stated in Ms bill. Each party shall sustain his own costs in this court and in the court of law.
Long v. Gorsuch. — This bill was filed on the 9th of September, 1802, by John Long against Richard Gorsuch; after which it was amended, introducing some new matter, and making John Gorsuch also a defendant. From the original and amended bill it appears, that on the 8th of November, 1800, the plaintiff Long entered into articles of agreement with the defendant Richard Gorsuch, by which it was stipulated, that Long should, in consideration of $1300, convey to Richard Gorsuch a house and lot in the city of Baltimore; and that Richard Gorsuch should convey to Long one hundred and fifty acres of land in Baltimore counly, and all die grain then growing on it valued at sixty dollars; and one cow at fourteen dollars; and at the end of twelve months Richard was to pay Long the further sum of twenty-six dollars ; which was to be in full payment for the specified consideration of thirteen hundred dollars. But if the tract of land should measure more than one hundred and fifty acres, then Long agreed to pay at the rate of eight dollars per acre for all above that quantity. And it was further agreed, that each of the parties was to put the other into possession. The bill alleges, that possession had been exchanged and given as agreed upon; but that the defendant Richard had, in fact, no more than a mere equitable title at most, and that the legal title to the land was then in his father the defendant John Gorsuch, who had been privy to the contract, and with a full knowledge of it, had stood by, knowing of the valuable improvements made by the plaintiff, without giving him notice, that he John then held the legal title. Upon which the bill prayed for a specific performance of the contract, and for general relief.
The defendants by their answers admitted the contract as set out, and averred, that they were then competent, ready and willing to make a good legal title to the tract of land sold; and in all respects to comply with the contract on the part of Richard Gorsuch; and prayed, that the plaintiff might be compelled to convey the house and lot as stipulated, and to pay for the excess in the tract of land according to the terms of Ms agreement.
A commission was issued and proofs taken; and a survey was ordered, which was executed, and a certificate and plot returned showing the number of acres contained in the tract of land lying in Baltimore county; after which the case was brought on for a final hearing.
18th March, 1815. — Kilty, Chancellor. — This suit being then on the trial docket was submitted at December term last by the defendant on an abstract filed.
It appears that the price of the lot in Baltimore, viz. $1300, was to be made up by land in Baltimore counly, estimated to contain 150 acres, and to amount to $1200; and the other $100 in wheat in the ground, a cow, and $26 in money. And for every acre exceeding 150, Long was to pay Gorsuch at the rate of eight dollars per acre. The bill prays for a conveyance of the lands, or in case a good title can *362 not be obtained, or there should be a deficiency, that the $1300 may be paid back. As the proceedings stand under the amended bill, the Chancellor does not perceive, that there is any defect of tille, but is of opinion that justice may be done to the parties by decreeing mutual conveyances, and also by compelling the complainant to pay for the excess. A plot has been returned under the order of the court, by which the excess appears to be 62 acres, malting at $S, $-496. From which the $26 agreed on being deducted the sum due is $470. No exception has been made to the survey so returned; and therefore it is taken as the proper evidence for ascertaining the quantity. The complainant Long, having had the use of this excess of land, a claim for interest might on that account be made, but inasmuch as Gorsuch did not take any measures to have the land surveyed, and difficulties arose as to the title, it is deemed improper to allow such interest.
It is thereupon decreed, that the complainant, John Long, do on or before the tenth day of April next, pay to the defendant Richard Gorsuch, or bring into this court to be paid to him, the sum of four hundred and seventy dollars, and that he pay legal interest on the said sum from the said 10th of April 1815, if the principal should not then be paid. And also that the said complainant John Long, do by a good and sufficient deed to be executed and acknowledged according to law, convey to the defendant, his heirs or assigns, all that messuage or tenement in the agreement exhibited, dated the 8th of November, 1300, mentioned lying and being in that part of the city of Baltimore, called Fell’s Point, fronting thirty feet on Anne street, and sixty feet on Lancaster alley, thence with the division line of said tract thirty feet, and thence with a'straight line to the first place of beginning of the first thirty feet.
And it is further decreed, that the defendants, Richard Gorsuch and John Gorsuch, do by a good and sufficient deed to be executed and acknowledged according to law, convey to the complainant John Long, in fee simple, two hundred and twelve acres of land in Baltimore county, known by the name of Charles’ Mistake, and the Resurvey on Cockpit, the same being the land mentioned in the agreement of the 8th of November, 1800, as containing 150 acres, together with the excess of 62 acres, appearing on the survey returned to the court, the part called the Resurvey on the Cockpit, being called therein Ellis’ Folly. The said conveyance to be made on the payment or bringing in of the sum of 470 dollars, with the interest thereon as herein before decreed. The parties respectively to pay their own costs.
A copy of this decree having been served on the plaintiff as then required by the act of 1785, ch. 72, s. 25, and the amount not having been paid by him; on the petition of the defendant Richard Gorsuch, a fieri facias was issued in his favour, against the plaintiff on the 31st of August 1816, which was returned by the sheriff of Baltimore county, nulla bona.
The act of 1785, ch. 72, s. 21, declares, that in all casgs the defendant may exhibit interrogatories to the plaintiff, which shall be answered by him, &c. A similar enactment in Kentucky has been so construed, that such interrogatories are in all respects regarded as a cross bill, and as superseding the necessity of filing such a bill as well in cases, like this, for a specific performance as in all others. Wilson v. Bodley, 2 Litt. Rep. 57.

 Dove v. Dove, Dick. 617; Same Case, 1 Bro. C. C. 375; Stribley v. Hawkie, 3 Atk. 278; The Commonwealth v Ragsdale, 2 Hen. & Mun. 8.
McKomb v. Kankey. — 20th March, 1807. — Kilty, Chancellor. — The general power of the Court of Chancery to issue an injunction, directing possession to be delivered, is sanctioned by the practice in England, and by opr acts of assembly. The decree for possession and injunction is a process demandable of right as much as an attachment or other execution, and ought not to be refused where the power is considered to exist. An application for possession in such cases' is founded on the general powers of the court, and on the act of 1785, ch. 72, s. 25, which provides that the Chancellor may cause by injunction the possession of the estate and effects demanded by the bill and petition, and whereof the possession or a sale is decreed to be delivered to the plaintiff or otherwise, according to the terms and import of such *364 decree, and as the nature of the case may require. Under which last part of the clause the injunction may be modified to suit the particular case. In this ease the lands had been sold to satisfy a mortgage. Before the hill was filed, but after the mortgage was made, the possessor had leased the lands of the mortgagor, for a term of years yet unexpired, he had covenated to erect a mill which he had built, and alleged that he besides made other permanent improvements. He objected that he ought to have been made party, that he ought to he allowed for his lasting improvements, and that having obtained the lease without notice of the mortgage, he had a right to hold possession.' But the purchaser taking the title of both plaintiff and defendant, has obtained a right paramount to that of this occupying lessee who claims under the defendant, who could give him no right in opposition to that of the mortgagee whose deed had been duly recorded. This lessee must seek reimbursement for his improvements and other losses from his lessor in whose place he stood. Whereupon it is ordered, that the possession be delivered; and that an injunction be issued accordingly. _
Chapline v. Chapline. — 12th July, 1810. — Kilty, Chancellor. — The Chancellor has not fully made up his mind as to the power of the court to grant the injunction herein prayed; hut supposing it to exist, he is not satisfied that it would he proper to exercise it at this time when it would he attended with the loss of the crop growing on the land. But it is ordered that an injunction be issued, in the manner which will then be directed, unless cause be shewn, or appear to the contrary during the first four days of September term next: provided a copy of this order be served, See. before the 15th August next.
No sufficient cause having been shewn, an injunction was ordered on’ the 5th of October following.

 1825, ch. 103; 1831, ch. 41.

 Rawlings v. Carroll, ante, 75; Wren v. Kirton, 8 Ves. 502; Sugden, Vend. & Pur. 42; Oland’s Case, 5 Co. 116; Co. Litt. 55, b.
Wright v. Weight. — 1716.—Decreed, that the defendant convey to the complainant, John Wright and his heirs, the land in dispute on his or their paying the defendant forty pounds sterling by good bills of exchange ; and that she have liberty to finish the crop now upon hand; and that the said John Wright enter thereupon by Christmas day, but not to disturb her in the use of the houses until she has finished the shipping and packing the crop, and the use of the quarter in the interim. Chan. Records, lib. P. L. folio 292.
Taylor v. Colegate. — This was a creditor’s bill filed on the 25th of March, 1803, by two of the creditors of John Colegate, deceased, against his six children and heirs, five of whom were infants. The bill states, that, being indebted, he died without leaving a sufficiency of personal estate to pay his debts; but that he held an equitable interest in certain parcels of land, which it was prayed might be sold to pay his debts. The defendants answered, and a decree was passed in the usual form, directing a sale to be made.
After which Elizabeth Colegate, the widow of the deceased debtor, filed her petition, in which, among other things, she stated, that she then, 12th May, 1804, had a quantity of wheat and rye growing on the land; which she had, by her own personal labour and the assistance of her neighbours, contrived to put in the ground the then last fall; that she apprehended the trustee would sell her grain then growing, with the land; whereupon she prayed relief, &c.
12th May, 1804. — Haktsost, Chancellor. — On reading the petition of Elizabeth Cole-gate, the Chancellor thinks proper to declare, that it was not the intent of his decree, that the crop growing on the land of John Colegate should be sold with the lands; and that the trustee ought to announce to purchasers, that the crop is excepted.— Chancery Records, 1804, p. 151.